## 11534.  WOOD *v.* THE STATE.

BROYLES, C. J.  The evidence relied upon to convict the defendant was circumstantial and was not sufficient to exclude every reasonable hypothesis save that of his guilt.  On the contrary, it was consistent with the theory of his innocence.  The court therefore erred in overruling the motion for a new trial.

*Judgment reversed.  Luke and Bloodworth, JJ., concur.*

DECIDED JULY 14, 1920.

Indictment for larceny, etc.; from Walton superior court — Judge Cobb.  April 22, 1920.

On both counts of an indictment charging larceny and the receiving of stolen goods Lillious Wood was found guilty.  Two bales of stolen cotton were hauled by his wagon and his mules to his premises at night and were left there.  Other persons indicted for the theft pleaded guilty, and, as witnesses in his behalf, testified that he had nothing to do with it.  The State relied on evidence as to tracks of a horse and buggy, and other circumstances, to show that he was present when the cotton was taken from the owner's premises.  The owner testified: " The next morning after the cotton had been stolen I set out to find it. . . I found buggy tracks and horse tracks where the cotton was stolen.  It was a rubber-tired buggy, nearly new.  The horse was shod in front and barefooted behind.  I measured the horse's foot where he was shod.  The buggy was driven up in line where the cotton was loaded.  One of the horse's tracks showed one of his hind feet was reel-footed; he made a one-sided track which showed very distinctly.  I measured the horse's track and. . . went to the pasture where this horse was and measured his foot, laid it on there like I did on the track, and it fit exactly; it was Lillious Wood's horse.  Lillious Wood had a rubber-tired buggy.  We found it under the shed that morning in his yard. . . When I first saw those horse tracks it was across the railroad from my house, and it had turned out the edge of the road.  It had rained the day before.  It was very distinct. .The buggy went out in a sandy place.  I found the horse in Lillious Wood's pasture, and took the measurement of the tracks at the railroad crossing and at Lillious Wood's place.  Lillious Wood's place is about a mile from where I found the tracks. . . I swear it was the same track, as the tracks in the pasture corresponded with the other tracks.  I don't know [whether] anybody

else around has a rubber-tired buggy or not." Another witness testified that at sundown on the day before the finding of the tracks he saw Lillious Wood driving a horse to a rubber-tired buggy, and that the horse tracks were found near the house of Bailey, the owner of the cotton. "The horse was shod in front and barefooted behind. I saw the same tracks in Lillious Wood's yard. We measured them, and then the horse's foot. . . . I tracked the horse and measured the track; the same horse made them." The other defendants testified that they went to Wood's house in his absence, about 8 o'clock at night, and got his wagon, hitched his two mules to it, drove them off, and got the two bales of cotton; that he was not with them and did not know anything about it; that they had made no arrangement to borrow the wagon; that when they returned to his house that night, bringing the cotton with them, it was 12 o'clock; that when they reached there he was coming through a field with a lantern and was driving his cow; that he "had just come from the show;" that they asked him to sell the cotton, but he refused to have anything to do with it, and told them to take it away, and said that if anybody came there and asked about it he was going to tell who got it; and that they then carried it back of his house and threw it down; according to the testimony of one of them they threw it down in the defendant's pasture; it was also testified that they threw it down in the woods. Witnesses for the State testified that they found the cotton covered by bushes near a branch in Wood's pasture, about 200 yards back of his house, and saw wagon tracks which led from his house and over very rough ground, down a steep hill to where the cotton was found. A constable testified: "After finding the cotton we went back to Lillious's house; he was not at home, but at his mother's place, loading cotton. I told him to come down off the wagon. I arrested him. His wife and mother came up and wanted to know what was the trouble, and Lillious said, 'About that cotton last night.' He said he told those boys that if anybody came there he was going to tell them about the cotton," and he gave the names of the boys that took the cotton.

It was testified that on the night on which the cotton was stolen there was a carnival in the town of Social Circle, which was "three or four miles from Lillious's house and about the same distance

from Mr. Bailey's house," and that Lillious Wood and his wife "came in" and were at the carnival between 11 and 12 o'clock that night. Another witness testified that he saw Lillious Wood "about the middle of the evening," driving a horse to a buggy, past the house of the witness, a mile from Lillious's place. Eli Pritchard testified that he was a prisoner in the jail with Lillious Wood and the other defendants charged with the larceny of the cotton and "heard them make a conspiracy to put the crime on Bob Cobb and to clear Lillious Wood, and say that Bob Cobb told them to go and get the cotton and bring it to Lillious's house," and that if this could be done, Lillious would pay the rest out of jail. The statements of this witness were denied by Lillous Wood in his statement at the trial, and by the other defendants who testified. Wood denied that he had any connection with the crime, and his statement accorded substantially with that of the other defendants as to what occurred when the cotton was brought to his home. He said that when he told them to take it away, they "went off down in the woods somewhere," and he did not know where they carried it.

It was contended on the part of the accused that there was not sufficient evidence to authorize a conviction on either count of the indictment, and that the verdict finding him guilty on both counts was inconsistent and void; and on the latter proposition his counsel cited: 128 Mass. 60; 104 Ill. 565; 1 Bish. Crim. Proc. (2d ed.), chap. 30, sec. 7; 16 Corpus Juris, sec. 2596, subhead 5, note 36 A. Cited contra: 21 *Ga. App.* 328 (2).

*Frank D. Pierson, George F. Fielding,* for plaintiff in error.

*W. O. Dean, solicitor-general,* contra.